UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| CHARLES EDWARD VENABLE, JR. and CHRISTY ROSE VENABLE, | § | CASE NO. 05-45424-H4-7 |
| | § | |
| DEBTORS | | |

## MEMORANDUM OPINION
## ON TRUSTEE'S OBJECTION TO EXEMPTION

## I. INTRODUCTION

In this Memorandum Opinion, the Court considers the issue of whether a cause of action that arises out of the purchase of a homestead is exempt under the homestead laws of Texas. On March 14, 2006, the Court held a hearing on the Trustee's Objection to Exemption (Trustee's Objection), in which the Trustee objected to the Debtors' claimed exemption of a cause of action that arises out of the Debtors' purchase of their homestead. (Doc. No. 14).  The Court has determined that the Debtors' cause of action that arises out of the purchase of their homestead is not exempt as part of the Debtors' homestead after considering: (1) the Trustee's Objection; (2) the Debtors' response (Doc. No. 17); (3) the evidence; (4) the testimony of Debtor Charles Edward VENABLE, Jr.; (5) the arguments of counsel; and (6) the applicable law.  For the reasons set forth below, the Court finds that the Trustee's Objection should be sustained.

## II. FINDINGS OF FACT

**A.**   **Procedural Background**

1.    On September 20, 2005, the Debtors filed their Chapter 7 bankruptcy petition (Doc. No. 1), listing on Schedule A (Real Property) a manufactured home and lot located at 10023 Summerberry Lane in Tomball, Texas (Tomball Property) as their only real property.

2.    Additionally, in response to item number 20 in Schedule B (Personal Property), the Debtors listed a  "[c]laim against Michael Martz, et al. for deceptive practices in sale of home. (estimated actual claim; punitive damages may also be awarded)" valued at $70,000.00 (the Cause of Action). *Id.*

1

3.      In Schedule C (Property Claimed as Exempt), the Debtors listed the Cause of Action, $36,900.00[1] and $1,094.00[2] as the Value of Claimed Exemption, and $70,000.00 and as the Current Market Value of Property Without Deducting Exemption. *Id.*

4.      Also, in Schedule C, the Debtors listed the Tomball Property, $0.00 as the Value of Claimed Exemption, and $55,000.00 as the Current Market Value of Property Without Deducting Exemption. *Id.*

5.      The Debtors filed their first Amended Schedule C on November 9, 2005, citing the Texas Constitution and Property Code as the laws providing each exemption in place of 11 U.S.C. § 522 specified on their initial Schedule C. (Doc. No. 7.) The Debtors also changed the Value of the Claimed Exemption for the Cause of Action from $36,900.00 and $1,094.00 to $70,000.00. (Doc. Nos. 1,7.)

6.      On December 29, 2005, the Trustee filed Trustee's Objection to Exemption objecting to the Debtors' inclusion of the Cause of Action as an exemption in Schedule C. (Doc. No. 14.)

7.      Since the filing of the Trustee's Objection, the Debtors have further amended their Schedules, including Schedule C, and such amendments have drawn a further objection from the Trustee. (Doc. No. 35.)[3] The Trustee's most recent Objection includes the objection to the Debtors' inclusion of the Cause of Action as exempt, but this most recent Objection also objects to other claimed exemptions. This Memorandum Opinion addresses only the Debtors' claimed exemption as to the Cause of Action.

## B. Factual Background

8.      A few years ago, the Debtors purchased the Tomball Property, financing much of the $90,000.00 purchase price through a mortgage.

9.      Pursuant to the terms of the mortgage, the Debtors agreed that the amount of their monthly mortgage payments would increase over time.

10.     The Debtors initially paid $600.00 to $700.00 per month on their mortgage.

---

[1]The Debtors specified 11 U.S.C. § 522(d)(1) as the law providing the exemption.

[2]The Debtors specified 11. U.S.C. § 522(d)(5) as the law proving the exemption.

[3]The third, and most current Amended Schedule C, lists the Tomball Property, with $0.00 as the Value of Claimed Exemption, and $55,000.00 as the Current Market Value of Property Without Deducting Exemption. (Doc. No. 36.) The Debtors also listed the Cause of Action as exempt property, with $70,000.00 as the Value of Claimed Exemption, and $70,000.00 as the Current Market Value of Property Without Deducting Exemption. *Id.*

2

11.   Pursuant to the terms of the terms of the contract, the mortgage payment increased to approximately $900.00 per month.

12.   Debtor Charles Edward VENABLE, Jr. testified that he was aware that his mortgage payment would increase, but he did not think that it would increase as much as it did.

13.   Around that time that their monthly mortgage payment had increased to $900.00, the Debtors voluntarily moved from the Tomball Property, filed bankruptcy on September 20, 2005, and are now renting another house.

14.   The Debtors, along with other similarly situated plaintiffs, filed the Cause of Action around the summer of 2005. The Cause of Action alleged that Michael Martz, *et al.* engaged in fraud, conspiracy, negligence, and practices violative of the Texas Deceptive Trade Practices Act (DTPA) with respect to the selling and financing of real property (including the selling and financing of the Tomball Property to the Debtors). The Debtors and other plaintiffs in the Cause of Action sought the following relief:

    (a)   Out-of-pocket expenses, including, but not limited to, the difference between the value as represented and the value received.
    (b)   Loss of credit and damage to credit reputation.
    (c)   Interest and/or finance charges assessed against and paid by Plaintiffs.
    (d)   Loss of the "benefit of the bargain."
    (e)   Diminished or reduced market value.
    (f)   Unjust enrichment by defendant title insurance underwriters.
    (g)   Unjust enrichment by defendant land sellers.

    *Pl. Original Pet.* at 22[4] The Debtors and other plaintiffs also sought damages under the DTPA and attorney's fees in the Cause of Action.

15.   When the Debtors filed for bankruptcy, they claimed both the Tomball Property and the Cause of Action as exempt property. (Doc. No. 1.)

16.   Throughout the three amendments of their Schedule C, the Debtors have continued to claim both the Tomball Property and the Cause of Action as exempt property. (Doc. Nos. 1, 7, 34, 36.)

## III. CONCLUSIONS OF LAW

17.   Upon the filing of a bankruptcy petition , § 541 of the Bankruptcy Code creates an estate that is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *State Farm Ins. Co. v. Swift*, 129 F.3d

---

[4]1.   A copy of the Cause of Action was admitted at the March 14, 2006 hearing as Trustee's Exhibit 1.

792, 795 (5th Cir. 1997). This definition of the bankruptcy estate is very broad and includes causes of action belonging to the debtor at the commencement of the case. *Swift*, 129. F.3d at 795 (citing *Louisiana World Exposition v. Fed. Ins. Co,*, 858 F.2d 233, 245 (5th Cir. 1988)).

18.     In the instant case, the Debtors had an interest in the Cause of Action as of the commencement of this case.  The Debtors' interest in the Cause of Action is therefore property of the bankruptcy estate unless it is (1) "excluded" from the bankruptcy estate altogether; or (2) included in the bankruptcy estate but thereafter "exempted" from use in satisfying claims of creditors and other authorized charges.  *See* 11 U.S.C. §§ 522, 541(a)(1); *Traina v. Sewell* (*In re Sewell*), 180 F.3d 707, 710 (5th Cir. 1999).

19.     The Debtors cite *State Farm Insurance Company v. Swift* (*In re Swift*) and § 31.002(f) of the Texas Civil Practice and Remedies Code in support of their argument that the Cause of Action is property exempt from the bankruptcy estate. 129 F.3d 792 (5th Cir. 1997).

20.     In *Swift*, the Fifth Circuit held that the cause of action of the debtor, Swift, became part of the bankruptcy estate but was exempt property under Texas Property Code § 42.0021. *Id.* at 794.  In his cause of action, Swift alleged that State Farm's negligence and breach of fiduciary duty resulted in the *loss* of a bankruptcy exemption, namely, Swift's retirement account[5]. *Id.*  In reaching its holding, the Fifth Circuit noted that its previous decisions determined that Swift's retirement account, as it existed after State Farm's alleged negligence and breach of fiduciary duty, was not exempt property. *Id.* at 801.  The Fifth Circuit, however, determined that Swift's cause of action aimed at replacing the lost retirement account and related exemption was exempt property. *Id.*

21.     The critical distinction between *Swift* and the case at bar is that Swift sued for the loss of his bankruptcy exemption.  In the case at bar, the Debtors' Cause of Action is not for the loss of any exemption.  In the most recent amendment of their Schedule C, the Debtors claim the Tomball Property as exempt property under Texas homestead law, citing Article 16, §§ 50 and 51 of the Texas Constitution and §§ 41.001 and 41.002 of the Texas Property Code. (Doc. No. 36, Attach. 1.)  The Debtors further claim that the Cause of Action is

---

[5]Swift was a State Farm insurance agent who participated in a Keogh retirement plan that State Farm administered. *Swift*, 129 F.3d at 794.  In 1986, Congress substantially revised the federal tax code. *Id.*  As of February 1990, State Farm had not amended its Keogh plan to comply with the revised laws. *Id.*  In February of 1990, Swift contemplated filing bankruptcy. *Id.*  Fearing that his Keogh plan would not qualify as exempt property under the Texas bankruptcy exemptions, Swift converted his Keogh plan into a self-directed Individual Retirement Plain (IRA). *Id.*  Swift then filed bankruptcy in March of 1990. *Id.*  Swift claimed that his IRA was exempt property, and two creditors objected. *Id.*  The bankruptcy court found that the IRA was not exempt property. *Id.*  The bankruptcy court further denied Swift a discharge of the creditors' claims because it found that Swift transferred, concealed, or disposed of property within one year of filing bankruptcy with the intent to hinder, delay, or defraud creditors. *Id.* at 794-95.  The Fifth Circuit affirmed the denial of discharge. *Id.* at 795.  Swift then filed suit alleging that State Farm was liable for the lost exemption of his IRA under theories of negligence and breach of fiduciary duty. *Id.*

4

exempt under the same homestead provisions of the Texas Constitution and Property Code. *Id.* Unlike Swift, the Debtors have not lost any exemption for which they may claim a substitution. Moreover, the Debtors' Cause of Action neither alleges nor seeks recovery for loss of an exemption. While the Tomball Property is exempt from the bankruptcy estate as the Debtors' homestead, the Cause of Action is not.

22.   In holding that Swift's cause of action for the loss aimed at replacing his lost exemption, the Fifth Circuit explained:

> [Texas] courts are driven by the purpose and intent of the exemption, not just by the plain language of the statutes. The Texas courts have made this point in numerous cases in which a specific exemption has been extended to include the proceeds from the *disposition* of exempt property. For instance, an exemption for household furniture included the proceeds from an insurance settlement after the furniture was *destroyed*, and exemption for one "carriage" included the proceeds paid on an insurance policy after an automobile was *damaged*, and the homestead exemption included the proceeds paid upon the *forced disposition* of the homestead as well as the cause of action filed to recover damages on a *lost homestead*. One common theme runs through all of these decisions. The proceeds, insurance, cause of action, etc., are a *substitute* for the exempt property that is *lost*. To be effective, the *substitute must be treated as if it were the lost item.*

*Swift*, 129 F.3d at 801 (citations omitted) (emphasis added).

23.   In the instant case, the Debtors' homestead and the related exemption in the Tomball Property were never lost. Therefore, there is nothing for the Debtors to substitute for their homestead exemption that was never lost. Further, unlike the debtor in the case cited by the *Swift* court, the Debtors have introduced no evidence that the Tomball Property has been subject to a forced disposition for which the Debtors could substitute any proceeds from the Cause of Action as their homestead exemption. *See id.* (citing *In re Osborne*, 176 B.R. 217, 219-20 (Bankr. E.D. Okla. 1994), *rev'd in part on other grounds and aff'd in part*, 83 F.3d 433 (10th Cir. 1996)). Accordingly, the Court finds that the Cause of Action is not a valid exemption and therefore sustains the Trustee's Objection.

## IV. CONCLUSION

24.   The Debtors attempt to claim both the Tomball Property and the Cause of Action as their homestead exemption. Relevant law in the Fifth Circuit holds that a debtor may claim either the property itself as the exemption or a substitution for the loss of the exempt property. The Debtors have not lost the Tomball Property as their homestead, and the Cause of Action does not allege, or seek recovery for, the loss of a homestead. The Debtors therefore may not substitute the Cause of Action for their homestead exemption because the

5

Case 05-45424   Document 38   Filed in TXSB on 04/05/06   Page 6 of 6

Debtors have never lost their exempt homestead property, which has always been the Tomball Property. For the reasons set forth above, this Court sustains the Trustee's Objection. A separate order sustaining the Trustee's Objection will be entered on the docket simultaneously with the entry of this Memorandum Opinion.

Signed on the 5th day of April, 2006.

Jeff Bohm
United States Bankruptcy Judge